IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-01538-CMA-NRN

THOMAS NEILSEN,

Plaintiff,

v.

MAGGIE M. MCELDERRY, and
JOHN AND JANE DOE, whose true name(s) is/are unknown,

Defendants.

**REPORT AND RECOMMENDATION ON
DEFENDANT MCELDERRY'S MOTION TO DISMISS (DKT. #15)**

**N. Reid Neureiter
United States Magistrate Judge**

This case is before the Court pursuant to Defendant Maggie M. McElderry's Motion to Dismiss (Dkt. #15), referred to me by Judge Christine M. Arguello (Dkt. #19). The Court has carefully considered the motion, Plaintiff's Opposition to Defendant's Motion to Dismiss (Dkt. #21), and Defendant's Supplement to the Motion to Dismiss (Dkt. #24). The Court also has taken judicial notice of the Court's file, considered the applicable Federal Rules of Civil Procedure and case law, and heard argument by the parties at a hearing held on February 12, 2019.

For the following reasons, the Court RECOMMENDS that Ms. McElderry's Motion to Dismiss be GRANTED with respect to Mr. Neilsen's Fourth Claim for Relief alleging conspiracy, but DENIED in relation to Mr. Neilsen's First, Second, and Third Claims for Relief.

1

## I. FACTUAL BACKGROUND

Unless otherwise noted, the following facts are taken from Mr. Neilsen's Civil Rights Complaint with Request for Trial by Jury (Dkt. #1), and are presumed to be true for purposes of this Recommendation.

Prior to commencing this lawsuit, Mr. Neilsen was in the custody of the Colorado Department of Corrections (CDOC), and confined at the Crowley County Correctional Facility (CCCF). He had been sentenced to four years in prison after pleading guilty to one count of sexual assault on a child, and having judgment enter on one deferred count after he sought to withdraw his plea.[1] He currently is seeking post-conviction relief "to prove his innocence" in relation to the sexual assault conviction.

At his parole hearing in October 2016, Mr. Neilsen advised the parole board that he was pursuing post-conviction relief. He presented the parole board with a parole plan stating his desire to parole at home with his wife and continue working construction, while also pursuing a degree from Adams State University. On October 17, 2016, the parole board granted Mr. Neilsen's mandatory release under the following conditions: (1) he present an adequate parole plan; (2) he have a suitable parole sponsor (his wife); (3) he have adequate housing/accommodations; and (4) he have adequate work opportunities. The parole board also noted, in all capital letters, that Mr. Neilsen "DENIES COMMITTING ANY CRIMES AGAINST CHILDREN."

---

[1] *See* Report and Recommendation on Motion to Dismiss in *Neilsen v. Connaghan, et al.*, Case No. 17-cv-00617-CMA-MJW (Dkt. #61 at 2.) Pursuant to Fed. R. Evid. 201, the Court may take judicial notice of court records in other cases without converting this Motion to one for summary judgment. *United States v. Boyd*, 289 F.3d 1254, 1258 (10th Cir. 2002). *See also St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) ("Judicial notice is particularly applicable to the court's own records of prior litigation closely related to the case before it.").

Mr. Neilsen's mandatory release was scheduled to occur on June 20, 2017, at which time he would have served three years of his four-year sentence. Prior to June 20, 2017, Mr. Neilsen met on several occasions with CCCF parole officer Ms. McElderry, who was not his community parole officer, to discuss the conditions of his upcoming mandatory release to parole. During these discussions, Mr. Neilsen advised Ms. McElderry that he was pursuing post-conviction relief and he would agree to attend therapy sessions as required by a community parole officer, but he would not admit guilt as to any crimes against children.

Ms. McElderry, however, presented Mr. Neilsen with a parole conditions agreement that required Mr. Neilsen to "participate in a sex offender intake, evaluation and successfully complete treatment at the discretion of the Sex Offender Supervision Team." (Dkt. #24-1 ¶ 24.) This requirement was not among the conditions set forth by the parole board. Mr. Neilsen, on more than one occasion, advised Ms. McElderry that to "participate in" and "successfully complete" sex offender treatment would be incompatible with his right to pursue post-conviction relief because, as a part of such treatment, he would be required to admit guilt to a crime that he did not commit. Mr. Neilsen therefore asserted his Fifth Amendment right not to incriminate himself, and said he could not agree to participate in and "successfully complete" sex offender treatment.

After Mr. Neilsen reiterated his position during a June 8, 2017 meeting, Ms. McElderry allegedly told Mr. Neilsen she would not discuss legal issues with him, and that the parole conditions agreement, including the requirement that he participate in and complete sex offender treatment, was not negotiable. After the meeting, Mr. Neilsen

3

sent Ms. McElderry a kite to confirm their discussion, including the invocation of his Fifth Amendment privilege.

According to Mr. Neilsen, during one of their meetings, he also asked Ms. McElderry for a copy of the parole conditions agreement so that he could send it to his attorney, but she denied this request, saying he would only receive a copy of the agreement after he had signed it. He alleges Ms. McElderry also would not allow him to meet with his community parole officer, as required by CDOC regulations.

Mr. Neilsen further alleges, in his opposition to Ms. McElderry's motion to dismiss, that prior to his mandatory release date, he gave Ms. McElderry a highlighted copy of *United States v. Von Behren*, 822 F.3d 1139 (10th Cir. 2016). (Dkt. #21 at 3, 10, 12-13.)[2] In *Von Behren*, the Tenth Circuit Court of Appeals held that requiring a parolee to participate in and successfully complete a sex offender treatment program as a new and modified condition of the parolee's supervised parole violated the parolee's Fifth Amendment privilege against self-incrimination because, as part of the program, the parolee would be required to answer questions regarding whether he had committed sexual crimes. The court "conclude[d] that the government's threat to revoke Mr. Von Behren's supervised release for his failure to answer potentially incriminating questions rises to the level of unconstitutional compulsion." *Id.* at 1148.

On June 20, 2017, Ms. McEdlerry did not allow Mr. Neilsen to be released on

---

[2] Although Mr. Neilsen did not allege in his complaint that he gave a copy of the *Von Behren* decision to Ms. McElderry, whether he did so does not change my analysis, as this decision nonetheless "clearly establishes a right" on Mr. Neilsen's part to invoke his Fifth Amendment right against self-incrimination when presented with a parole condition requiring him to participate in and successfully complete sex offender treatment. *See, e.g.*, *Redmond v. Crowther*, 882 F.3d 927, 935 (10th Cir. 2018) ("A case clearly establishes a right when a Supreme Court or Tenth Circuit decision is on point").

4

parole because he refused to sign the parole conditions agreement that included the requirement that Mr. Neilsen participate in and successfully complete sex offender treatment. Ms. McElderry filed a complaint against Mr. Neilsen charging him with failure to "follow the directives of and cooperate with the Community Parole Officer" (i.e., he failed/refused to sign the parole conditions agreement). Ms. McElderry had Mr. Neilsen arrested on this charge, and he was taken to the Fremont County Detention Center (FCDC), where he remained incarcerated for an additional 28 days. After 28 days in the FCDC, the charge against him was dismissed and Mr. Neilsen was released on parole without having to agree to participate in or complete sex offender treatment.

The main thrust of Mr. Neilsen's complaint is that he was denied parole and incarcerated in the FCDC for 28 days because he refused to agree to an unconstitutional parole condition. He even provided (allegedly) the parole officer who issued the parole violation a Tenth Circuit Court of Appeals' case that is directly on point, which she ignored.

## II. PROCEDURAL BACKGROUND

Mr. Neilsen asserts four claims against Ms. McElderry and a John and Jane Doe, for (1) unlawful seizure and false imprisonment in violation of the Fourth and Fourteenth Amendments; (2) violation of his Fifth Amendment right to be free from self-incrimination; (3) retaliation in violation of his Fifth Amendment right to be free from self-incrimination; and (4) conspiracy to violate his constitutional rights.

Ms. McElderry has moved to dismiss all four claims asserted against her. She argues that Mr. Neilsen's Fourth Amendment claim fails because she believed that Mr. Neilsen "did not comply with a valid directive" by refusing "to sign the conditions of his parole," and that "[f]iling a parole complaint placing him in custody based upon the belief

5

that he violated a technical term of his parole was reasonable under the circumstances." (Dkt. #15 at 4.) She argues his Fifth Amendment claim fails because she did not seek "to compel him to admit anything that would incriminate himself," and also because Mr. Neilsen "fails to allege how the signing of the conditions of his parole would result in him incriminating himself." (*Id.* at 5.) As for his retaliation claim, Ms. McElderry argues Mr. Neilsen "was not engaged in a constitutionally protected activity," but "was merely directed to sign the conditions of his parole." (*Id.* at 6.) She argues that none of his allegations indicate "that the mere signing of the conditions of his parole would have require [sic] that he somehow incriminate himself." (*Id.*) Concerning his conspiracy claim, Ms. McElderry contends that Mr. Neilsen has failed to allege sufficient facts to prove any of the requisite elements of this claim. Finally, Ms. McElderry argues she is entitled to qualified immunity because Mr. Nielsen has failed to sufficiently allege that she violated his clearly established, constitutional rights. (*Id.* at 8.)

## III. LEGAL STANDARDS

### A. Pro Se Plaintiff

Mr. Neilsen is proceeding pro se. The Court, therefore, "review[s] [his] pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States,* 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). *See also Haines v. Kerner,* 404 U.S. 519, 520–21 (1972) (holding allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers"). However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has

6

violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters,* 459 U.S. 519, 526 (1983).

   **B. Failure to State a Claim Upon Which Relief Can Be Granted**

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.,* 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall,* 935 F.2d at 1198. Notwithstanding, the court need not accept conclusory allegations without supporting factual averments. *Southern Disposal, Inc., v. Texas Waste,* 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means the plaintiff has pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). But "[a] pleading that offers 'labels and

7

conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citing *Twombly*, 550 U.S. at 555, 557) (internal citation omitted).

The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory. *Id.* at 680. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 679. On the other hand, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 678 (citation omitted).

As part of this analysis, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). *See also Utah Gospel Mission v. Salt Lake City Corp.*, 425 F.3d 1249, 1253-54 (10th Cir. 2005) ("[A] document central to the plaintiff's claim and referred to in the complaint may be considered in resolving a motion to dismiss, at least where the document's authenticity is not in dispute."). "[F]actual allegations that contradict . . . a properly considered document are not well-pleaded facts that the court must accept as true." *GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1385 (10th Cir. 1997).

## C. Qualified Immunity

"Qualified immunity protects officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Thomas v. Kaven*, 765 F.3d 1183, 1195 (10th Cir. 2014) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Once the defense is asserted, it is the plaintiff's burden to show not only that the defendant's actions violated a constitutional or statutory right, but also that the right was clearly established at the time of the conduct at issue. *Id.* Concerning the latter, the "relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his [or her] conduct was unlawful in the situation confronted." *Id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)).

"Although summary judgment provides the typical vehicle for asserting [] qualified immunity," a defendant also may raise it in a motion to dismiss. *Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004). However, asserting qualified immunity in the context of a Rule 12(b)(6) motion subjects a defendant like Ms. McElderry "to a more challenging standard of review than would apply on summary judgment," as it is Ms. McElderry's conduct "as alleged in the complaint that is scrutinized for 'objective legal reasonableness.'" *Id. See also Behrens v. Pelletier*, 516 U.S. 299, 309 (1996)). The Court is to consider "(1) whether the facts that a plaintiff has alleged make out a violation of constitutional right, and (2) whether the right at issue was clearly established." *Keith v. Koerner*, 707 F.3d 1185, 1188 (10th Cir. 2013) (internal quotation marks omitted). A plaintiff "need only allege enough factual matter" to state a claim that is "plausible on its face and provide fair notice to a defendant." *Id.* (internal quotation marks omitted). If, at the motion to dismiss stage, a plaintiff sufficiently alleges the

9

deprivation of a clearly established right, then qualified immunity will not protect the defendant.

## IV. ANALYSIS

I begin my analysis with Mr. Neilsen's Fifth Amendment claim, as I believe it is straightforward and provides the appropriate backdrop for evaluating his remaining claims for retaliation and violation of his Fourth and Fourteenth Amendment rights.

**A. Mr. Neilsen has plausibly stated a claim for violating his Fifth Amendment privilege against self-incrimination.**

The Fifth Amendment to the United States Constitution provides, in pertinent part, that no person "shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V. "It has long been held that this prohibition not only permits a person to refuse to testify against himself at a criminal trial in which he is a defendant, but also 'privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings.'" *Minnesota v. Murphy*, 465 U.S. 420, 426 (1984) (quoting *Lefkowitz v. Turley,* 414 U.S. 70, 77 (1973)). *See also Von Behren*, 822 F.3d at 1144 (quoting *Murphy*). As the United States Supreme Court clarified in *Murphy*, "[a] defendant does not lose this protection by reason of his conviction of a crime." *Id*.

The facts in *Von Behren* are remarkably similar to those presented in this case. There, Mr. Von Behren had been convicted of distributing child pornography, and as he neared release from prison, his supervised release conditions were modified to require that he "not only participate in but also successfully complete an approved sex offender treatment program." *Id*. at 1142. To do so, however, would require Mr. Von Behren to undergo a sexual history polygraph, which he argued would violate his Fifth Amendment

right against self-incrimination, including mandatory and follow up questions asking whether he had committed past sex crimes. *Id.* The Tenth Circuit agreed.

The court began its analysis by noting "the Supreme Court has always broadly construed the protection afforded by the Fifth Amendment privilege against self-incrimination," and that "[n]ot much is required . . . to show an individual faces some authentic danger of self-incrimination, [] as the privilege 'extends to admissions that may only *tend* to incriminate.'" *Id.* at 1144 (emphasis in original) (internal citations omitted). The court further stressed it would "uphold an individual's invocation of the privilege against self-incrimination unless it is 'perfectly clear, from a careful consideration of all the circumstances in the case,' that the witness 'is mistaken' and his answers could not 'possibly have' a 'tendency to incriminate.'" *Id.* at 1144-45 (internal citations omitted). The Court went on to reject the government's argument "that when the answer to a question would present only a remote and speculative possibility of incrimination," there is no Fifth Amendment violation. *Id.* at 1145.

Addressing compulsion, "[t]he touchstone of the Fifth Amendment," which "prevents the state from threatening to impose 'substantial penalties because a witness elects to exercise his Fifth Amendment right not to give incriminating testimony against himself,'" the *Von Behren* court unequivocally held "that the government's threat to revoke Mr. Von Behren's supervised release for his failure to answer potentially incriminating questions rises to the level of unconstitutional compulsion." *Id.* at 1148-49 (citing *Murphy*, 465 U.S. at 435 (". . . if the state, either expressly or by implication, asserts that invocation of the privilege would lead to revocation of probation, it would have created the classic penalty situation . . .")). In *Murphy*, "even the state agreed that" if Mr. Murphy had claimed the Fifth Amendment privilege, the state "could not have

11

revoked his probation: 'Indeed, in its brief . . . the State submits that it would not, and legally could not, revoke probation for refusing to answer questions calling for information that would incriminate in separate criminal proceedings.'" *Id.* at 1149 n.8 (quoting *Murphy*, 465 U.S. at 438).

Here, as in *Von Behren*, "*Murphy* makes this case an easy one. It recognizes that a threat to revoke one's probation for properly invoking his Fifth Amendment privilege is the type of compulsion the state may not constitutionally impose." *Id.* at 1150 (citing *Murphy*, 465 U.S. at 426). In this case, however, Ms. McElderry went beyond mere threats: she actually prevented Mr. Neilsen's release on his mandatory release date by filing a complaint and arresting him because he would not sign a parole agreement containing an additional condition, beyond those imposed by the parole board. Mr. Neilsen expressly told Ms. McElderry that the terms she sought to impose on him violated his Fifth Amendment right against self-incrimination. Mr. Neilsen's factual allegations plausibly state a claim against Ms. McElderry for violating his Fifth Amendment right against self-incrimination.

I therefore RECOMMEND that Ms. McElderry's motion to dismiss Mr. Neilsen's Fifth Amendment claim be DENIED.

### B. Mr. Neilsen has plausibly pled his Fourth Amendment claim.[3]

According to Mr. Neilsen, Ms. McElderry's arrest of him for refusing to sign the parole condition agreement, which resulted in Mr. Neilsen remaining in custody for an additional 29 days, violated his Fourth Amendment right to be free from an unlawful

---

[3] In his complaint, Mr. Neilsen asserts he had a "clearly established Constitutional right under the Fourteenth Amendment to his liberty and to be free from continued incarceration," and that Ms. McElderry's actions violated that right. (Dkt. #1 ¶¶ 45, 47.) Ms. McElderry does not address this alleged Fourteenth Amendment right or violation in her motion, and the Court declines to address it sua sponte.

seizure or false imprisonment.

Ms. McElderry, on the other hand, asserts that her "belief that [Mr. Neilsen] violated a technical term of his parole," and her corresponding decision to arrest him and place him in custody, were "reasonable under the circumstances." (Dkt. #15 at 4.)

"The touchstone of the Fourth Amendment is reasonableness." *United States v. Knights,* 534 U.S. 112, 118 (2001) (as quoted in *Jenkins v. Currier*, 514 F.3d 1030, 1033 (10th Cir. 2008)). While "persons subject to criminal sanctions, such as incarcerated prisoners and parolees, have more limited Fourth Amendment rights," those rights nevertheless still exist. *Jenkins*, 514 F.3d at 1033.

At this stage of the proceedings, I cannot rule as a matter of law that Ms. McElderry's asserted belief that Mr. Neilsen violated a technical term of his parole was reasonable, or that it was reasonable for her to arrest him and place him in custody for 29 days beyond his mandatory release date. Arguably, Ms. McElderry's conduct was not reasonable because Mr. Neilsen not only explained to her that he had a Fifth Amendment right that would be violated if he was forced to sign the parole agreement, he gave her a highlighted copy of a case to support his assertion of this right. In the end, the reasonableness of Ms. McElderry's actions are factual issues that may be susceptible to resolution on a motion for summary judgment, or that may need to be resolved by a jury, but are inappropriate to resolve on a Rule 12(b)(6) motion to dismiss.

Accordingly, I RECOMMEND that Ms. McElderry's motion to dismiss Mr. Neilsen's Fourth Amendment claim be DENIED.

### C. Mr. Neilsen has plausibly pled a retaliation claim.

"There are three necessary elements of a retaliation claim: (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions

caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct." *Williams v. Taylor*, 561 F. App'x 695, 698–99 (10th Cir. 2014) (citing *Shero v. City of Grove, Okl.,* 510 F.3d 1196, 1203 (10th Cir. 2007)). "An act taken in retaliation for the exercise of a constitutionally protected right is actionable under § 1983 even if the act, when taken for a different reason, would have been proper." *DeLoach v. Bevers*, 922 F.2d 618, 620 (10th Cir. 1990) (quoting *Matzker v. Herr*, 748 F.2d 1142, 1150 (7th Cir. 1984)).

Ms. McElderry asserts that Mr. Neilsen's retaliation claim against her fails because he "was not engaged in a constitutionally protected activity," but "was merely being directed to sign conditions of his parole," and "[t]here are no allegations indicating that the mere signing of the conditions of his parole would have require [sic] that he somehow incriminate himself." (Dkt. #15 at 6.) She also asserts that Mr. Neilsen "has not alleged facts sufficient to demonstrate that had [sic] the Defendant's conduct was substantially motivated by any retaliatory motive." (*Id.*) I disagree with these assertions.

First, according to Mr. Neilsen's allegations, which I must accept as true for purposes of Rule 12(b)(6), he not only expressly invoked his Fifth Amendment privilege against self-incrimination during his meetings with Ms. McElderry, he also specifically explained to her the basis for his Fifth Amendment claim, going so far as to provide her with a highlighted copy of *Von Behren*. Second, Ms. McElderry advised Mr. Neilsen she would not discuss legal issues with him, nor provide him with an unsigned copy of the parole agreement so he could send it to his attorney, and she told Mr. Neilsen that the parole agreement's conditions, including the requirement that he attend and complete

sex offender treatment, were non-negotiable. Mr. Neilsen then filed a kite to (presumably) complain about Ms. McElderry and document their communications. And, finally, after Mr. Neilsen invoked his Fifth Amendment right and filed a kite, Ms. McElderry filed a complaint against Mr. Neilsen for failing to cooperate with her and failing to sign the non-negotiable parole agreement. Then, rather than allowing him to be released on his mandatory release date, arrested him and placed him in custody in another facility (FCDC), where he remained incarcerated for an additional 28 days beyond his mandatory release date.

These alleged facts satisfy each of the elements set forth in *Shero* and thus plausibly state a viable retaliation claim. As a result, I RECOMMEND that Ms. McElderry's motion to dismiss Mr. Neilsen's retaliation claim be DENIED.

**D. Mr. Neilsen has failed to plausibly plead a conspiracy claim.**

Mr. Neilsen does not dispute that "at this time he is unable to demonstrate that other individual's [sic] conspired with the Defendant to violate his Constitutional rights." (Dkt. #21.) He only asserts it would be premature to dismiss this claim, and that he should be allowed to conduct discovery to try to identify who, if anyone, conspired with Ms. McElderry to violate his constitutional rights. (*Id.*)

Mr. Neilsen not only has failed to plead the requisite elements of conspiracy— including any allegation of "class-based or racial discriminatory animus," *Bisbee v. Bey*, 39 F.3d 1096, 1102 (10th Cir. 1994), *cert. denied*, 515 U.S. 1142 (1995)—he has not pled anything other than "[c]onclusory allegations without factual support" in relation to his conspiracy claim, and these "are inadequate as a matter of law." *Wilson v. City of Lafayette*, No. CIVA 07CV01844EWNKLM, 2008 WL 4197742, at *10 (D. Colo. Sept. 10, 2008) (citing *Clulow v. Oklahoma*, 700 F.2d 1291, 1303 (10th Cir. 1983)).

I RECOMMEND that Ms. McEdlerry's motion to dismiss Mr. Neielsen's conspiracy claim be GRANTED.

### E. At this stage of the litigation, Ms. McElderry is not entitled to qualified immunity.

Because Ms. McElderry has asserted qualified immunity in the context of a Rule 12(b)(6) motion, she is subject "to a more challenging standard of review than would apply on summary judgment," as it is her conduct "as alleged in the complaint" that I must evaluate. *Kaven*, 765 F.3d at 1195 (internal citations omitted). I must, therefore, determine whether Mr. Neilsen's complaint plausibly states a violation of his clearly established constitutional rights.

"To qualify as clearly established, a constitutional right must be sufficiently clear that every reasonable official would have understood that what he [or she] is doing violates that right." *Redmond*, 882 F.3d at 935 (internal quotation marks omitted). "A case clearly establishes a right when a Supreme Court or Tenth Circuit decision is on point, or the clearly established weight of authority from other courts shows that the right must be as the plaintiff maintains." *Id.* (brackets and internal quotation marks omitted).

Liberally construing Mr. Neilsen's allegations in his complaint, he has plausibly stated a violation of his clearly established Fifth Amendment right against self-incrimination. He alleges Ms. McElderry added a condition to his parole agreement requiring that he participate in and complete sex offender treatment; he told her he would not agree to the condition because he was seeking post-conviction relief to prove his innocence; he expressly invoked his Fifth Amendment right against self-incrimination; he explained the basis for invoking this right; and he gave her a copy of *Von Behren* to further illustrate the basis for such right. Ms. McEdlerry, according to Mr. Neilsen, ignored all of this, filed a complaint against Mr. Neilsen, and then had him

arrested for "failing to cooperate" with her, resulting in Mr. Neilsen not being released on his mandatory release date, and being incarcerated for an additional 29 days.

Based on the facts as alleged by Mr. Neilsen, I find he has met his burden with respect to whether he had a clearly established constitutional right at the time of Ms. McElderry's alleged misconduct.

## Conclusion

For the foregoing reasons, I RECOMMEND that Ms. McEdlerry's' Motion to Dismiss (Dkt. #15) in relation to Mr. Neilsen's conspiracy claim be GRANTED, but that it be DENIED in all other respects.

**IT IS ORDERED that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b);** *Thomas v. Arn*, **474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions.** *Makin v. Colo. Dep't of Corr.*, **183 F.3d 1205, 1210 (10th Cir. 1999);** *Talley v. Hesse*, **91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review.** *United States v. One Parcel of Real Prop.*, **73 F.3d 1057, 1060 (10th Cir. 1996).**

Date: March 8, 2019

_N. Reid Neureiter_
N. Reid Neureiter
United State Magistrate Judge

17