**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 18-cv-01538-CMA-NRN

THOMAS NEILSEN,

      Plaintiff,

v.

MAGGIE M. MCELDERRY, and
JOHN AND JANE DOE,

      Defendants.

---

**ORDER ADOPTING IN PART THE RECOMMENDATION OF UNITED STATES
MAGISTRATE JUDGE**

---

This matter is before the Court on review of the Recommendation by United

States Magistrate Judge N. Reid Neureiter, wherein he recommends that this Court

grant in part and deny in part Defendant Maggie M. McElderry's Motion to Dismiss (Doc.

# 15). (Doc. # 25.) Magistrate Judge Neureiter recommends that the Court deny the

Motion to Dismiss as to Plaintiff Thomas Neilsen's Claims One, Two, and Three, and

grant the Motion as to Claim Four. For the following reasons, the Court adopts in part

the Recommendation and grants Defendant's Motion to Dismiss.

## I.    <u>BACKGROUND</u>

**A.    FACTUAL BACKGROUND**

Magistrate Judge Neureiter provided a thorough recitation of the factual and

procedural background in this case. The Recommendation is incorporated herein by

reference, and the facts will be repeated only to the extent necessary to address Defendant's objections. 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b).

In 2016, Plaintiff was in the custody of the Colorado Department of Corrections ("CDOC") at the Crowley County Correctional Facility ("CCCF") where he was serving his four years sentence after "pleading guilty to one count of sexual assault on a child, and having judgment enter on one deferred count after he sought to withdraw his plea." (Doc. # 25 at 2.) Plaintiff is seeking "post-conviction relief to a charge that was" allegedly "unfounded and based entirely on false reports." (Doc # 1 at ¶ 6.) At a parole hearing, Plaintiff advised the Parole Board that he was seeking post-conviction relief.[1] (*Id.* at ¶ 16.) On October 17, 2016, the Parole Board granted Plaintiff's mandatory release to parole "under the following conditions: (1) he present an adequate parole plan; (2) he have a suitable parole sponsor; (3) he have adequate housing/accommodations; and (4) he have adequate work opportunities. (*Id.* at ¶ 17.) When the Parole Board granted parole to Plaintiff, it noted in "capital letters" that "Plaintiff 'DENIES COMMITTING ANY CRIMES AGAINST CHILDREN.'" (*Id.* at ¶ 18.)

Plaintiff was scheduled for release on parole on June 20, 2017. (Doc. # 1 at ¶ 30.) On several occasions prior to Plaintiff's upcoming release, Plaintiff met with CCCF Parole Officer Defendant Maggie McElderry to discuss the conditions of Plaintiff's upcoming release. (*Id.* at ¶ 19.) Defendant presented Plaintiff with the Parole Board's terms of the parole conditions agreement ("Parole Agreement"). (Doc. # 1 at 4, ¶¶ 21–23; Doc. # 24-1 at 1, ¶ 24.) The Parole Agreement provided that Plaintiff "shall

---

[1] In Plaintiff's Complaint, he never specified for which claim he is seeking post-conviction relief.

participate in a sex offender intake, evaluation and successfully complete treatment at the discretion of the Sex Offender Supervision Team." (Doc. # 24-1 at ¶ 24.)

Throughout Plaintiff's meetings with Defendant about the Parole Agreement, "Plaintiff explained to the Defendant that sex offender treatment would be incompatible with his right to pursue post-conviction relief, in that as part of treatment he would be required to admit guilt to a crime that he did not commit." (Doc. # 1 at ¶ 8.) Plaintiff repeatedly advised Defendant that he would not sign the Parole Agreement because he was pursuing post-conviction relief, he would not admit guilt as to any crimes against children, and he was invoking the Fifth Amendment privilege against self-incrimination. (*Id.* at ¶¶ 8–9, 20, 28.)

Plaintiff "offered to correct and initial the mistakes in the parole conditions agreement[;]" however, Plaintiff alleged that Defendant indicated that "(1) the Plaintiff could not make any corrections to the agreement, (2) the agreement in its present form was not negotiable and (3) the Plaintiff could not note any mistakes in the agreement on the back of the agreement." (Doc. # 1 at ¶ 24.) Plaintiff requested Defendant to send a copy of the Parole Agreement to Plaintiff's attorney. (Doc. # 1 at ¶¶ 26, 28.) Defendant rejected the request and explained that Plaintiff's attorney would be provided only with a copy of the Parole Agreement after Plaintiff signed it. (Doc. # 1 at ¶ 26.) During another meeting on June 8, 2017, Plaintiff objected to signing the Parole Agreement on Fifth Amendment grounds to which Defendant "stated that she would not discuss legal issues with the Plaintiff." (Doc. # 1 at ¶ 28.) Defendant also denied Plaintiff's request to meet with his own community parole officer. (Doc. # 1 at 4, ¶ 31.)

On June 20, 2017, Defendant did not allow Plaintiff to be released from the correctional facility when Plaintiff declined to sign the Parole Agreement. (Doc. # 1 at ¶ 30.) On that day, Defendant "filed a complaint against [Plaintiff] [] charging him with failure to 'follow the directives of and cooperate with the Community Parole Officer[,]'" and Plaintiff was arrested on that charge. (*Id.* at ¶¶ 32–33.) Plaintiff was detained at Fremont County Detention Center and released after a period of time. (*Id.* at ¶ 35.) When Plaintiff was released, he signed a different parole agreement that did not contain the requirement to participate in or complete sex offender treatment. (*Id.* at ¶¶ 32–36.)

Plaintiff asserted four claims against Defendant McElderry and Defendants "John and Jane Doe" for (1) unlawful seizure and false imprisonment of Plaintiff in violation of the Fourth and Fourteenth Amendments; (2) unlawful violation of Plaintiff's Fifth Amendment right against self-incrimination; (3) retaliation in violation of Plaintiff's Fifth Amendment right to be free from self-incrimination; and (4) conspiracy to violate Plaintiff's constitutional rights. (Doc. # 1 at 6–11.) Defendant moved to dismiss all of Plaintiff's claims because Defendant is entitled to qualified immunity and Plaintiff failed to plausibly state claims for relief under Rule 12(b)(6). (Doc. # 15.)

## B. Magistrate Judge Neureiter's Recommendation

Magistrate Judge Neureiter recommends that the Court grant Defendant's Motion to Dismiss (Doc. # 15) as to Claim Four, but deny it as to Claims One, Two, and Three. (Doc. # 25.) The Magistrate Judge also rejected Defendant's defense of qualified immunity because Plaintiff sufficiently alleged that Defendant violated Plaintiff's "clearly established" constitutional rights. (*Id.* at 16–17.)

First, Magistrate Judge Neureiter determined that Plaintiff "plausibly stated a claim for violating his Fifth Amendment privilege against self-incrimination." (*Id.* at 10.) The Magistrate Judge likened Plaintiff's case to the United States Court of Appeals for the Tenth Circuit's *United States v. Von Behren*—a decision in which the court held that a plaintiff's Fifth Amendment right was violated when the government petitioned to amend the plaintiff's supervised release agreement to condition his release upon his submission to a polygraph examination and answering of self-incriminating questions about sexual crimes unrelated to his conviction for distribution of child pornography. 822 F.3d 1139 (10th Cir. 2016). Relying on that case, Magistrate Judge Neureiter concluded that when Defendant prevented Plaintiff's release because Plaintiff refused to sign the Parole Agreement while invoking his Fifth Amendment privilege against self-incrimination, Defendant's conduct violated the Fifth Amendment. (*Id.* at 12.)

Next, Magistrate Judge Neureiter concluded that Plaintiff "plausibly pled his Fourth Amendment claim" because "as a matter of law" he could not rule that Defendant's "asserted belief that [Plaintiff] [] violated a technical term of his parole was reasonable, or that it was reasonable for [Defendant] to arrest him and place him in custody for 29 days beyond his mandatory release date." (*Id.* at 13.) The Magistrate Judge observed that Defendant's conduct was arguably unreasonable because Plaintiff "not only explained to her that he had a Fifth Amendment right that would be violated if he was forced to sign the parole agreement, he gave her a highlighted copy of a case to support his assertion of this right." (*Id.*)

Regarding Plaintiff's retaliation claim, because Magistrate Judge Neureiter concluded that Plaintiff plausibly pled a claim for violation of his Fifth Amendment right, the Magistrate Judge reasoned that Plaintiff "engaged in constitutionally protected activity," and as such, Plaintiff established a plausible retaliation claim. (*Id.* at 13–15.)

With respect to Plaintiff's conspiracy claim, Magistrate Judge Neureiter recommends that the Court dismiss the claim because Plaintiff "has not pled anything other than '[c]onclusory allegations without factual support' in relation to his conspiracy claim, and these 'are inadequate as a matter of law.'" (*Id.* at 15) (quoting *Wilson v. City of Lafayette*, No. CIVA 07-cv-01844-EWN-KLM, 2008 WL 419742, at *10 (D. Colo. Sept. 10, 2008)).

Defendant objected to Magistrate Judge Neureiter's Recommendation as to Claims One, Two, and Three. (Doc. # 28.) Plaintiff responded in opposition to Defendant's Objection. (Doc. # 29.) For the following reasons, the Court respectfully disagrees with Magistrate Judge Neureiter's conclusion that Plaintiff's allegations support plausible claims for relief. Accepting Plaintiff's allegations as true and drawing all reasonable inferences therefrom in favor of Plaintiff, the Complaint is still devoid of facts necessary to plausibly establish that his constitutional rights were violated. Thus, Defendant is entitled to qualified immunity, which bars Plaintiff's remaining claims.

## II.      STANDARDS OF REVIEW

### A.      REVIEW OF A RECOMMENDATION

When a magistrate judge issues a recommendation on a dispositive matter, Federal Rule of Civil Procedure 72(b)(3) requires that the district judge "determine *de*

*novo* any part of the magistrate judge's [recommended] disposition that has been properly objected to." An objection is properly made if it is both timely and specific. *United States v. One Parcel of Real Property Known As 2121 East 30th Street*, 73 F.3d 1057, 1059 (10th Cir. 1996). In conducting its review, "[t]he district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

When there are no objections filed to a magistrate judge's recommendation, "the district court is accorded considerable discretion with respect to the treatment of unchallenged magistrate reports. In the absence of timely objection, the district court may review a magistrate [judge's] report under any standard it deems appropriate." *Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991).

**B.    *PRO SE* PLAINTIFF**

Plaintiff is proceeding *pro se*. The Court, therefore, reviews his pleading "liberally and hold[s] [it] to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). However, a pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983); *see also Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (a court may not "supply additional factual allegations to round out a

plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (a court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues"). Nor does pro se status entitle a litigant to an application of different rules. *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

## C.    RULE 12(B)(6)

Rule 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall*, 935 F.2d at 1198. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory. *Id*. at 679–81. Second, the Court considers the

factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 679.

However, the court need not accept conclusory allegations without supporting factual averments. *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Nor does the complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id*. (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*. (citation omitted). This pleading standard ensures "that a defendant is placed on notice of his or her alleged misconduct sufficient to prepare an adequate defense" and avoids "ginning up the costly machinery associated with our civil discovery regime on the basis of a largely groundless claim." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011).

A Rule 12(b)(6) motion "must be converted into a motion for summary judgment whenever the district court considers matters outside the pleadings." *Lowe v. Town of Fairland, Okl.*, 143 F.3d 1378, 1381 (10th Cir. 1998) (citing Fed. R. Civ. P. 12(b)(6)). "Reversible error may occur, however, if the district court considers matters outside the pleadings but fails to convert the motion to dismiss into a motion for summary judgment." *Id*. (citing *Miller v. Glanz,* 948 F.2d 1562, 1565 (10th Cir. 1991)). "However,

notwithstanding the usual rule that a court should consider no evidence beyond the pleadings on a Rule 12(b)(6) motion to dismiss, the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215–16 (10th Cir. 2007) (quotation marks omitted).

### III.    DISCUSSION

### A.    PLAINTIFF'S CONSPIRACY CLAIM

Neither party objected to Magistrate Judge Neureiter's Recommendation with respect to Plaintiff's Claim Four. The Court has reviewed all the relevant pleadings concerning the Recommendation on Claim Four. Based on this review, the Court concludes that Magistrate Judge Neureiter's analysis and recommendation is correct and that "there is no clear error on the face of the record." *See* Fed. R. Civ. P. 72(a). The Court therefore adopts the Recommendation with respect to Claim Four.

### B.    DEFENDANT IS ENTITLED TO QUALIFIED IMMUNITY

The Court next addresses Defendant's assertion of qualified immunity because resolution of that issue will govern the Court's ruling on Plaintiff's remaining claims.

1.    Applicable Law

To resolve a Defendant's claim of qualified immunity, this Court must decide, pursuant to Rule 12(b)(6), whether the facts Plaintiff has alleged make out a violation of a clearly establish constitutional right. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). "To 'nudge their claims across the line from conceivable to plausible,' [] in this context, plaintiffs must allege facts sufficient to show (assuming they are true) that the

defendants plausibly violated their constitutional rights, and that those rights were clearly established at the time." *Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008) (quoting *Twombly* 550 U.S. at 570); *see also Peterson v. Jensen*, 371 F.3d 1199, 1202 (10th Cir. 2004) (explaining that if a court "find[s] a violation," the court must "next determine whether 'that right was clearly established at the time of the alleged conduct'") (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Indeed, "[q]ualified immunity attaches when the official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kisela v. Hughes*, 138 S.Ct. 1148, 1152 (2018).

A clearly established right is one that is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 132 S.Ct. 2088, 2093 (2012) (internal quotation marks and alteration omitted). "[E]xisting precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011).[2] "[C]learly established law" is not defined "at a high level of generality." *Id.* at 742. The dispositive question is "whether the violative nature of particular conduct is clearly established." *Id.* "In other words, immunity protects all but the plainly incompetent or those who knowingly violate the law." *Kisela*, 138 S.Ct. at 1152 (quoting *White v. Pauly*, 137 S.Ct. 548, 551 (2017)).

---

[2] Existing precedent may include Supreme Court or Tenth Circuit case law that exists "on point" or if the 'clearly established weight of authority from other circuits' found a constitutional violation from similar actions.'" *Peterson v. Jensen*, 371 F.3d 1199, 1202 (10th Cir. 2004) (quoting *Murrell v. School Dist. No. 1,* 186 F.3d 1238, 1251 (10th Cir. 1999)).

This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam). Such specificity is especially important in the Fourth Amendment context, where the Supreme Court has recognized that "[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine . . . will apply to the factual situation the officer confronts." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015).

 "[I]t is the defendant's conduct *as alleged in the complaint* that is scrutinized for 'objective legal reasonableness.'" *McAllister v. Kellogg*, 637 F. App'x 518, 519 (10th Cir. 2016) (quoting *Behrens v. Pelletier,* 516 U.S. 299, 309 (1996)) (emphasis in original). District courts may grant a motion to dismiss on the basis of qualified immunity, but "[a]sserting a qualified immunity defense via a Rule 2(b)(6) motion . . . subjects the defendant to a more challenging standard of review than would apply on summary judgment." *Peterson,* 371 F.3d at 1201.

## 2. Qualified Immunity Attaches to Defendant's Conduct

Plaintiff fails to allege sufficient facts that show Defendant's conduct violated Plaintiff's clearly established constitutional rights of which a reasonable person would have known. *Kisela*, 138 S.Ct. at 1152. "Where constitutional guidelines seem inapplicable or too remote, it does not suffice for a court simply to state" that the official engaged in unreasonable conduct, "deny qualified immunity, and then remit the case for a trial on the question of reasonableness." *Id.* at 1153 (applying principle to excessive force case). "An officer 'cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the

defendant's shoes would have understood that he was violating it.'" *Id.* (quoting *Plumhoff v. Rickard*, 134 S.Ct. 2012, 2023 (2014)). For the following reasons, Plaintiff does not state a plausible claim for violations of the Fifth and Fourth Amendments, and as such, Defendant is entitled to qualified immunity.

As a preliminary matter, in reviewing Defendant's Motion to Dismiss, Plaintiff's conclusory allegations must be ignored. *Iqbal*, 556 U.S. at 678. Throughout the Complaint, Plaintiff repeatedly alleges that Defendant "illegally arrested" him or "arrested [] [P]laintiff in retaliation for his refusal to sign the conditions of parole documents that were illogical, illegal and in violation of Colorado statutory law, Colorado Department of Corrections Administrative Regulations and the Plaintiff's United States and Colorado Constitutional Rights" (Doc. # 1 at ¶¶ 3–4), and that Plaintiff met with Defendant "on several occasions" to "explain to the Defendant that sex offender treatment would be incompatible with his right to pursue post-conviction relief, in that as part of treatment he would be required to admit guilt to a crime that he did not commit." (*Id.* at ¶¶ 7–8.) These are conclusory statements that must be disregarded.

The Court, therefore, assesses only whether the remaining factual allegations can support that Defendant plausibly violated Plaintiff's constitutional rights. They do not. The Court addresses each alleged constitutional violation in turn.

      *a.    Defendant's Conduct Did Not Violate the Fifth Amendment.*

      *i.    <u>Fifth Amendment Law</u>*

The Fifth Amendment to the United States Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const.

amend. V. An individual's Fifth Amendment right "privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or information, where the answers might incriminate him in future proceedings." *Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973). "A defendant does not lose this protection by reason of his conviction of a crime." *Minnesota v. Murphy*, 465 U.S. 420, 426 (1984).

"To assure an individual is not compelled to produce evidence that may later be used against him in a criminal action, the Supreme Court has always broadly construed the protection afforded by the Fifth Amendment privilege against self-incrimination." *Von Behren*, at 1144 (citing *Maness v. Meyers*, 419 U.S. 449, 461 (1975)). "The protection does not merely encompass evidence which may lead to criminal conviction, but includes information which would furnish a link in the chain of evidence that could lead to prosecution, as well as evidence which an individual reasonably believes could be used against him in a criminal prosecution." *Maness*, 419 U.S. at 461. "The Fifth Amendment privilege is only properly invoked when the danger of self-incrimination is 'real and appreciable,' as opposed to 'imaginary and unsubstantial[.]" *United States v. Von Behren*, 822 F.3d 1139, 1144 (10th Cir. 2016) (quoting *Brown v. Walker*, 161 U.S. 591, 599 (1896)). This privilege "'must be confined to instances where the witness has reasonable cause to apprehend danger from a direct answer.'" *Von Behren*, 822 F.3d at 1144 (quoting *Hoffman v. United States*, 341 U.S. 476, 486 (1951)).

The Tenth Circuit has explained that "[n]ot much is required . . . to show an individual faces some authentic danger of self-incrimination, [] as the privilege 'extends to admissions that may only *tend* to incriminate.'" *United States v. Rivas-Macias*, 537

F.3d 1271, 1278 (10th Cir. 2008) (quoting *Empsake v. United States*, 349 U.S. 190, 197 (1955) (emphasis in original)). If answering a question does not "merely confirm the operating assumption of law enforcement," and presents only a "remote and speculative possibility of incrimination[,]" an individual is still entitled to invoke the Fifth Amendment. *Von Behren*, 822 F.3d at 1145–46. Courts in this circuit "will uphold an individual's invocation of the privilege against self-incrimination unless it is 'perfectly clear, from a careful consideration of all the circumstances in the case,' that the witness 'is mistaken' and his answers could not 'possibly have' a 'tendency to incriminate.'" *Rivas-Macias*, 537 F.3d at 1278-79 (quoting *Hoffman*, 341 U.S. at 488). Whether an individual has properly invoked the Fifth Amendment privilege is a question of law. *Id.* at 1278.

"[T]he touchstone of the Fifth Amendment is compulsion . . .." *Von Behren*, 822 F.3d at 1147 (quoting *Lefkowitz,* 431 U.S. at 806). Under the Supreme Court's Fifth Amendment jurisprudence, "a threat to revoke one's probation for properly invoking the Fifth Amendment privilege is the type of compulsion the state may not constitutionally impose." *Von Behren*, 822 F.3d at 1150 (citing *Murphy*, 465 U.S. at 426). "A witness is compelled under the Fifth Amendment *as soon as the government threatens him* with a substantial penalty—it makes no difference whether he proceeds with answering or stands on his right." *Id.* at 1151 (citing *Turley*, 414 U.S. at 70–72) (emphasis in original).

## ii.     <u>Application</u>

Plaintiff alleged that Defendant violated his Fifth Amendment right against self-incrimination when Defendant requested him to sign a Parole Agreement that he "participate in a sex offender intake, evaluation and successfully complete treatment at

the discretion of the Sex Offender Supervision Team." (Doc. # 24-1; Doc. # 1 at ¶ 8, ¶¶ 20–21.) Relying on the Tenth Circuit's *Von Behren* decision, Magistrate Judge Neureiter agreed and concluded that the case clearly established Plaintiff's Fifth Amendment right. (Doc. # 25 at 10–11.) However, the Court is unconvinced that *Von Behren* clearly establishes that Plaintiff's Fifth Amendment right was implicated because that case provides a stark contrast to the present action.

The *Von Behren* plaintiff was sentenced to 121 months in prison and 3 years of supervised release for receipt and distribution of child pornography. *Id.* at 1141. Near his release, the probation office petitioned to modify his release conditions by adding new conditions, one of which mandated that the plaintiff participate in and successfully complete "an approved sex offender treatment program" ("treatment program"). *Id.* at 1141–42. The modifications would have required the treatment program to comply with "Colorado Sex Offender Management Board (SOMB)" standards. *Id.* at 1142.

SOMB-compliant treatment programs required sex offenders to undergo "sexual history polygraphs." *Id.* Another SOMB guideline necessitated "a written contract between the treatment provider and the sex offender." *Id.* The probation office assigned the plaintiff with a SOMB-certified treatment provider that presented him with a non-negotiable agreement to sign that would have required the plaintiff to "complete a non-deceptive sexual history polygraph" and authorize the treatment provider "to report to any appropriate authority or authorities any occurrence or potential occurrence of any sexual offense on [the plaintiff's] part regardless of how [the treatment provider] gains knowledge of such occurrence or potential occurrence." *Id.* The "sexual history

polygraph" included four mandatory questions pertaining to sexual misconduct that likely would have constituted additional sexual crimes unrelated to the one for which the plaintiff was convicted.[3] *Id.* at 1142–43. If the plaintiff refused to answer two or more questions, the treatment provider would discontinue treatment, which would result in termination of the plaintiff's supervised release. *Id.* at 1141–42.

The plaintiff objected to the probation office's attempt to modify the terms of his release and argued that such modifications "violated his Fifth Amendment right against self-incrimination." *Id.* The Tenth Circuit agreed and held that when the government sought to amend the terms of the plaintiff's supervised release by threatening to remand him to prison unless he answered "incriminating sexual polygraph questions [,]" the government's conduct "constituted unconstitutional compulsion within the meaning of the Fifth Amendment." 822 F. 3d at 1148, 1150 (citing *McKune v. Lile*, 536 U.S. 24, 49 (2002) (O'Connor, J., concurring)). The court explained that the "Fifth Amendment is triggered when a statement would provide a 'lead' or 'a link in the chain of evidence needed to prosecute the' speaker, [] and affirmative answers to [the polygraph] [] questions would do just that." *Id.* at 1145 (quoting *United States v. Powe*, 591 F.2d 833, 845 n.36 (D.C. Cir. 1978)) (internal citations omitted). Because the plaintiff was "being asked to admit that he committed uncharged sexual crimes," there was no possibility

---

[3] Those four questions were: "1. After the age of 18, did you engage in sexual activity with anyone under the age of 15? 2. Have you had sexual contact with a family member or relative? 3. Have you ever physically forced or threatened anyone to engage in sexual contact with you? 4. Have you ever had sexual contact with someone who was physically asleep or unconscious?" *Id.* at 1143. An affirmative answer to any one of the questions would trigger a mandatory follow-up question asking "how many" times? *Id.*

that the plaintiff's answer would "merely confirm the operating assumption of law enforcement[.]" *Id.* at 1145–46.

Magistrate Judge Neureiter reasoned that the "facts in *Von Behren* are remarkably similar to those presented in this case" and concluded that Defendant "went beyond mere threats: she actually prevented [Plaintiff's] release on his mandatory release date by filing a complaint and arresting him because he would not sign a parole agreement containing an additional condition, beyond those imposed by the parole board." (Doc. # 25 at 10, 12.) The Court respectfully disagrees. *Von Behren* is distinguishable from the instant case for various reasons.

First, unlike the government in *Von Behren*, Defendant did not petition to modify terms of an existing supervised release agreement. The Parole Agreement represented the Parole Board's terms of Plaintiff's parole, including the condition requiring Plaintiff to "participate in a sex offender intake, evaluation and successfully complete treatment at the discretion of the Sex Offender Supervision Team." (Doc. # 24-1.) Plaintiff's Complaint does not mention a previous agreement other than the terms that the Parole Board approved; and the Parole Board's terms indicated that Plaintiff's parole was contingent on whether Plaintiff "presented an adequate parole plan" among other conditions.[4] (Doc. # 1 at ¶ 17.) In other words, the Parole Agreement captured the adequate parole plan deemed acceptable to the Parole Board.

---

[4] The Parole Agreement contradicts Plaintiff's allegation that the Defendant modified the terms of granting mandatory parole upon which the Parole Board agreed. (Doc. # 1 at ¶ 21.) The face of the Parole Agreement provided that it was the "Colorado State Board of Parole" that ordered the conditions of Plaintiff's Parole Agreement. (Doc. # 24-1 at 1.)

Furthermore, the *Von Behren* plaintiff faced an incontrovertibly different situation than Plaintiff. In that case, the government attempted to replace the terms of plaintiff's supervised release with conditions requiring him to answer self-incriminating questions during a polygraph examination and to authorize the treatment provider to report any of the plaintiff's alleged crimes. In contrast, in the instant case, neither the Parole Agreement nor Defendant required Plaintiff to submit to a polygraph examination or answer any questions—let alone self-incriminating ones. The Parole Agreement that Plaintiff was to sign **prior** to his supervised release merely provided that Plaintiff was to "participate in a sex offender intake, evaluation and successfully complete treatment **at the discretion** of the Sex Offender Supervision Team." (Doc. # 24-1 (emphasis added).) Indeed, successful completion of treatment may have been unnecessary as such completion depended on the "discretion" of the Sex Offender Supervision Team. (Doc. # 24-1.) Thus, Plaintiff was not being forced at that time to take any action that placed him in real danger of self-incrimination, at least at that point.

Finally, the sex treatment condition of Plaintiff's Parole Agreement would have served a legitimate penological interest that was reasonably related to the crime to which Plaintiff pleaded guilty. A sex offender treatment condition does not violate the Fifth Amendment when it is consistent with the function of parole and serves a legitimate penological interest. *Doe v. Heil*, 781 F. Supp. 2d 1134, 1141–43 (D. Colo. 2011). In *Doe v. Heil*, the court reviewed the Colorado Department of Corrections' administrative regulation that required sex offenders to "admit the commission of" sex offenses and "to pass an accompanying polygraph examination in order to participate

in/or be readmitted to the sex offender treatment program required for parole eligibility." *Id*. 1136–38. While the court recognized that this regulation represented a "threat of longer incarceration via the loss of parole eligibility" that amounted to compulsion, the regulation was nevertheless valid because "accepting responsibility" served the purposes of advancing the rehabilitative process for sex offenders and "legitimate penological interests" recognized by the Tenth Circuit and the Supreme Court. *Id.* at 1140–43 (citing *McKune v. Lile*, 536 U.S. 24, 37 (2002); *Searcy v. Simmons*, 299 F.3d 1220, 1228 (10th Cir. 2002)).

The modified condition of the *Von Behren* plaintiff's supervised release would have required him to answer self-incriminating questions about sexual crimes unrelated to the distribution of child pornography crime for which the plaintiff was convicted. 822 F.3d at 1141–43. Whereas in the instant case, Plaintiff pleaded guilty to one count of sexual assault on a child, and had judgment entered on one deferred count after Plaintiff sought to withdraw his plea. (Doc. # 25 at 2.) The sex treatment condition, thus, would have served a legitimate penological interest for the sexual assault on a child crime to which Plaintiff pleaded guilty, and as a result, no Fifth Amendment violation would have arisen. Accordingly, the *Von Behren* decision does not clearly establish that Plaintiff's Fifth Amendment right was violated under the circumstances of this case.

In sum, Plaintiff's allegations do not explain **why** the Parole Agreement would require Plaintiff "to admit guilt to a crime that he did not commit." (*Id.*) Instead, Plaintiff's conclusory allegations are "naked assertion[s] devoid of further factual enhancement" necessary to establish a plausible claim under Rule 12(b)(6). *Iqbal*, 556 U.S. at 678.

Further, there is nothing inherently unconstitutional about requiring a sex offender to participate in sex offender treatment to become eligible for or to maintain parole. *Heil*, 781 F. Supp. 2d at 1140–43. When Defendant presented Plaintiff with the Parole Board's Parole Agreement, including the sex offender treatment condition, and Defendant requested that Plaintiff sign the Parole Agreement prior to being released on parole, Defendant's conduct did not violate the Fifth Amendment. Nor did Plaintiff properly invoke the Fifth Amendment when he refused to sign the Parole Agreement.

### b.  *Defendant's Conduct Did Not Violate the Fourth Amendment.*

#### i.  <u>Fourth Amendment Law</u>

The Fourth Amendment provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "The touchstone of the Fourth Amendment is reasonableness." *United States v. Knights*, 534 U.S. 112, 118 (2001). "Although the existence or absence of a warrant will usually be relevant to the reasonableness inquiry, the Fourth Amendment does not require a warrant for every search or seizure." *Jenkins v. Currier*, 514 F.3d 1030, 1033 (10th Cir. 2008). "With respect to seizures in particular, '[i]n conformity with the rule at common law, a warrantless arrest by a law officer is reasonable under the Fourth Amendment where

there is probable cause to believe that a criminal offense has been or is being committed." *Id.* (quoting *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004)).

"[P]ersons subject to criminal sanctions, such as incarcerated prisoners and parolees, have more limited Fourth Amendment rights." *Jenkins*, 514 F.3d at 1033. "While 'parolees are protected against unreasonable searches and seizures[,] . . . their rights . . . are not coextensive with those of ordinary citizens." *Jenkins*, 514 F.3d at 1033 (quoting *Sherman v. U.S. Parole Comm'n*, 502 F.3d 869, 873 (9th Cir. 2007)). Additionally, the Tenth Circuit has held that the warrantless arrest of a convict who was accidentally released from prison did not constitute a violation of the Fourth Amendment. *Id.* at 1034. In doing so, the court relied on a line of cases in which "[m]ost courts that [] considered the Fourth Amendment implications of seizing a parole violator [] held that a parolee remains in legal custody during the period of his parole and therefore that the retaking of a parole violator does not constitute an arrest for Fourth Amendment purposes." *Id.* at 1033 (collecting cases). The court observed that the Ninth Circuit has "similarly indicated that the full protections of the Fourth Amendment" do not apply to the retaking of a "parolee" because the "arrest of a parolee is more like a mere transfer of the subject from constructive custody into actual or physical custody." *Id.* (quoting *United States v. Butcher*, 926 F.2d 811, 814 (9th Cir. 1998)).

The premise of this approach is consistent with Supreme Court precedent. Authorized parole "does not suspend service or operate to shorten" the term of a prison sentence. *Anderson v. Corall*, 263 U.S. 193, 196 (1923). "While on parole the convict is bound to remain in the legal custody and under the control of the warden until the

expiration of the term, less allowance, if any, for good conduct. While this is an amelioration of punishment, it is in legal effect imprisonment." *Id.* Indeed, "parole is an established variation on imprisonment of convicted criminals . . . The essence of parole is release from prison, before the completion of sentence, on the condition that the prisoner abide by certain rules during the balance of the sentence." *Samson v. California*, 547 U.S. 843, 850 (2006) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 477 (1972)). "[P]arolees have fewer expectations of privacy than probationers, because parole is more akin to imprisonment than probation is to imprisonment." *Id.* at 850 (holding that the Fourth Amendment does not prohibit a police officer from conducting a suspicionless search of a parolee).

ii.      <u>Application</u>

Plaintiff's allegations do not set forth a plausible Fourth Amendment violation because Defendant's refusal to release Plaintiff did not constitute an arrest for Fourth Amendment purposes. Accepting Plaintiff's allegations as true, Plaintiff was an incarcerated prisoner at "Cell House 5, a facility that is part of the Colorado Department of Corrections" when Defendant allegedly ordered Plaintiff to be transferred to "Fremont County Detention Center." (Doc. # 1 at ¶ 3.) Plaintiff alleges that Defendant's arrest was unreasonable under the Fourth Amendment because Defendant was not yet a parolee at the time Defendant arrested Plaintiff for failing to "follow the directives of and cooperate with the Community Parole Officer." (Doc. # 1 at ¶ 33; Doc. # 29 at 8–9.) According to Plaintiff, because he was not released on parole, it was unreasonable for Defendant to arrest Plaintiff for violating his parole agreement. (Doc. # 29 at 8–9.)

Plaintiff's argument is flawed because Plaintiff has put the cart before the horse. Defendant's refusal to release Plaintiff was not an arrest for Fourth Amendment purposes. Whether Plaintiff was a parolee or an incarcerated prisoner is irrelevant to the situation at hand. The Court agrees with Defendant and is persuaded by the line of cases holding that the retaking of either a parolee or convicted inmate does not constitute an arrest for Fourth Amendment purposes. *Jenkins*, 514 F.3d at 1033 (collecting cases); (Doc. # 28 at 5–6.) The Supreme Court's determination that a parolee's status is still "in legal effect imprisonment" reinforces the Court's reliance on these cases. *Anderson*, 263 U.S. at 196; *Samson*, 547 U.S. at 850. Accordingly, Defendant's conduct did not violate the Fourth Amendment because Defendant's refusal to release Plaintiff from prison and transfer of Plaintiff from custody of one prison to another did not constitute an arrest for Fourth Amendment purposes.[5]

Accepting Plaintiff's factual allegations as true and drawing all reasonable inferences therefrom in favor of Plaintiff, Plaintiff's Complaint does not "make out" plausible claims for violations of Plaintiff's constitutional rights. *Pearson*, 555 U.S. at

---

[5] Magistrate Judge Neureiter also reasoned that he could not recommend dismissal of Plaintiff's Fourth Amendment claim because,"[a]rguably, [Defendant's] conduct was not reasonable because [Plaintiff] not only explained to her that he had a Fifth Amendment right that would be violated if he was forced to sign the parole agreement, he gave her a highlighted copy of a case to support his assertion of this right." (Doc. # 25 at 13.) Setting aside the issue of whether Defendant's refusal to release Plaintiff constituted an arrest for Fourth Amendment purposes, the Court did not consider the allegation that Plaintiff provided a "highlighted copy of a case" to Defendant. This allegation does not appear on the face of Plaintiff's Complaint. Furthermore, given the Court's determination that Defendant's conduct did not violate the Fifth Amendment, whether Plaintiff provided a copy of the *Von Behren* case to Defendant does not affect the Court's ruling as to the Fourth Amendment claim.

232; *Kisela*, 138 S.Ct. at 1152 (internal quotations omitted). Therefore, Defendant is entitled to qualified immunity.

## C.    PLAINTIFF'S REMAINING CLAIMS MUST BE DISMISSED.

Based on the foregoing reasons, the Court has determined that Defendant is entitled to qualified immunity because Plaintiff failed to establish plausible claims for violations of the Fifth and Fourth Amendments. Qualified immunity operates then as Defendant's "immunity from suit" for Plaintiff's First Claim for Relief (Unlawful Seizure and False Imprisonment), Second Claim for Relief (Unlawful Violation of Plaintiff's Fifth Amendment Right), and Third Claim for Relief (Retaliation in Violation of the Plaintiff's Right to Exercise His Fifth Amendment Right). *Pearson*, 555 U.S. at 231; (Doc. # 1). In particular, because the Court determined that Plaintiff did not properly invoke the Fifth Amendment nor was there a Fifth Amendment Violation, Plaintiff did not engage in "constitutionally protected activity." *Worrell v. Henry*, 219 F.2d 1197, 1212 (10th Cir. 2000). As such, Plaintiff's retaliation claim cannot survive. Therefore, Plaintiff's Claims One, Two, and Three are dismissed with prejudice.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, the Court ORDERS as follows:

1.      Defendant's Objection (Doc. # 28) to the Recommendation is SUSTAINED;

2.      The Recommendation (Doc. # 25) of Magistrate Judge Neureiter is AFFIRMED AND ADOPTED IN PART and REJECTED IN PART as an Order of this Court;

3.    Defendant's Motion to Dismiss (Doc. # 15) is GRANTED; and

4.    Plaintiff's Complaint (Doc. # 1) is DISMISSED WITH PREJUDICE.[6]

DATED:  August 7, 2019

BY THE COURT:

CHRISTINE M. ARGUELLO
United States District Judge

---

[6] A dismissal with prejudice of a complaint that fails to state a claim under Rule 12(b)(6) is appropriate only when "granting leave to amend would be futile." *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006); *Guy v. Lampert*, 748 F. App'x 178, 181–82 (10th Cir. 2018). The Court finds, considering the totality of the circumstances, affording Plaintiff an opportunity to amend the complaint in an attempt to assert a plausible cause of action would be futile, particularly considering that the Court resolved the purely legal question of whether, accepting Plaintiff's allegations as true, Defendant's conduct violated clearly established law. *Weise v. Casper*, 507 F.3d 1260, 1265 (10th Cir. 2007) (recognizing that "a district court cannot avoid ruling on the merits of a qualified immunity defense when it can resolve the purely legal question of whether a defendant's conduct, as alleged by plaintiff, violates clearly established law"); *Lybrook v. Members of the Farmington Mun. Schs. Bd. of Educ.*, 232 F.3d 1334, 1341 (10th Cir. 2000) (affirming district court order granting motion to dismiss with prejudice on qualified immunity grounds).